# United States District Court

## SOUTHERN DISTRICT OF INDIANA

**UNITED STATES OF AMERICA**

v.

**JOSE LUIS BARRERAS, and**
**RAFAEL AYALA**

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:16-mj-0125

-01
-02

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about February 5, 2016, in Marion County, in the Southern District of Indiana defendant did,

Count 1: Conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 846.

I further state that I am a Special Agent, and that this complaint is based on the following facts:

See attached AFFIDAVIT

Continued on the attached sheet and made a part hereof.

_____
Michael D. Cline, Special Agent, DEA

Sworn to before me, and subscribed in my presence

February 16, 2016
**Date**

at   Indianapolis, Indiana

_____
Denise K. LaRue, U.S. Magistrate Judge
**Name and Title of Judicial Officer**

**Signature of Judicial Officer**

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT APPLICATION

This affiant, Michael D. Cline, a Special Agent with the Drug Enforcement Administration ("DEA"), being duly sworn under oath, states as follows:

1. I, am an "investigative or law enforcement officer" within the meaning of Section 2510(7), Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

2. I have been employed by the DEA since May, 1996. I am currently assigned to the DEA Indianapolis District Office, Indianapolis, Indiana, and have been so assigned since 2001. Prior to my assignment at the Indianapolis District Office, I was assigned to the DEA New York Field Division Office from 1996 through 2001. In connection with my official DEA duties, I investigate criminal violations of state and federal narcotics laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, 846, and 848. I have received special training in the enforcement of laws concerning controlled substances as found in Title 21 of the United States Code.

3. I have personally conducted and/or assisted in numerous criminal investigations involving controlled substances and money laundering. I have testified in state and federal judicial proceedings and prosecutions for violations of controlled substance laws. I have participated in the debriefing and interviews of defendants, witnesses, informants (confidential sources), and others who have knowledge both of the distribution and transportation of controlled substances and also of the laundering and concealing of proceeds from drug trafficking. I have reviewed numerous investigative reports and interviews related to the possession, manufacture, and delivery of, including possession with intent to deliver, controlled

1

substances. I am familiar with the ways in which drug traffickers conduct their business, including, but not limited to, their methods of importing and distributing controlled substances and their use of telephones and code language to conduct their transactions. I am familiar with and have participated in all of the normal methods of investigation, including, but not limited to visual surveillance, the general questioning of witnesses, the use of informants, the use of pen registers, and undercover operations. I have had conversations with drug traffickers concerning their methods of operation in the course of investigative interviews and have participated in the execution of numerous search warrants relating to illegal drug trafficking. My experience and training enables me to recognize methods and means used for the distribution of controlled substances and for the organization and operation of drug conspiracies, including the means employed to avoid detection.

4. This Affidavit is submitted in support of a complaint charging Jose Luis Barreras and Rafael Ayala with conspiracy to distribute 500 grams or more mof a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846 and a precision location order for a cellular telephone using telephone number (317) 600-4483, with service provided by Sprint, 6480 Sprint Parkway, Overland Park, Kansas, 66251 (**"Target Phone"**).

5. The information contained in this Affidavit is based upon my personal participation in the investigation described herein, upon information provided by other law enforcement officers involved in this investigation, and upon information from other individuals who have knowledge of the events and circumstances as described herein.

6. On February 5, 2016, DEA arrested a cooperating individual ("Individual #1") for conspiracy to distribute methamphetamine and related offenses. Individual #1 admitted to

his/her participation in the charged conspiracy and let DEA agents to various locations where Individual #1 had stored methamphetamine and firearms. Individual #1 turned the methamphetamine and firearms over to DEA. Following his arrest, Individual #1 successfully executed a controlled purchase of five pounds of methamphetamine that led to the arrest of three individuals.

7.     On February 11, 2016, Individual #1 placed a consensually recorded telephone call to telephone number (310) 904-4376 and had a conversation with Jose BARRERAS (as witnessed by your affiant). Individual #1 asked if the "three were still here?" (referring to 3 pounds of methamphetamine). Individual #1 advised BARRERAS had a customer that could receive the "three." BARRERAS stated, "you know him…it's my girlfriends nephew." Individual #1 said that the nephew could give them to the customer (referring to an agent acting in an undercover capacity.) BARRERAS advised Individual #1 that he would call the nephew and have him contact Individual #1 and give him the address for the delivery. No further calls were completed between Individual #1 and BARRERAS on February 11, 2016.

8.     Previously, Individual #1 had identified a picture of Rafael AYALA as the nephew to whom BARRERAS was referring. Individual #1 stated AYALA had previously delivered methamphetamine to Individual #1 utilizing a dark colored car that the model began with the later, "H." Individual #1 further stated he/she believed AYALA worked at a Sam's Club on the East Washington Street in the Indianapolis, Indiana area.

9.     On February 12, 2016, Individual #1 placed a consensually recorded telephone call to (310) 904-4376 and had a conversation with Jose BARRERAS. During this call, Individual #1 discussed that AYALA never got in touch with Individual #1. Individual #1 asked if he was going to do "it" (referring to fronting the 3 pounds of methamphetamine).

BARRERAS advised that "he" (AYALA) was at work right now, but could do it later on tonight. Individual #1 stated he/she would get in touch with the customer (Undercover Agent) and call back in fifteen minutes.

10. On February 12, 2016, Individual #1 placed a consensually recorded telephone call to (310) 904-4376 and had a follow-up conversation with Jose BARRERAS. During this conversation, Individual #1 said the customer (Undercover Agent) could do it after work. BARRERAS advised that "he" (AYALA) went to work at "one," and that he was at work right now. Individual #1 and BARRERAS discussed what number AYALA would be calling from and that the first three of the telephone number were "600." Individual #1 later provided the telephone number (317) 600-4483, the number used by **Target Phone**, from his/her missed call log. BARRERAS advised if the customer could meet near Keystone Avenue. Individual #1 and BARRERAS agreed that AYALA would contact Individual #1 after 9:00 p.m. so Individual #1 could arrange a meeting between the customer (Undercover Agent) and AYALA.

11. On February 12, 2016, Individual #1 contacted Jose BARRERAS at telephone number (310) 904-4376 and was advised that AYALA would be contacting Individual #1. Individual #1 later had telephone conversations with AYALA, who was utilizing **Target Phone**. During this conversation, AYALA and Individual #1 agreed for Individual #1 to text the customer's (Undercover Agent) telephone number to AYALA at the **Target Phone**. Individual #1 then texted the Undercover Agent's number to AYALA over **Target Phone**.

12. On February 12, 2016 at approximately 10:48 p.m., this affiant (acting in an undercover capacity) received an incoming telephone call from **Target Phone**. This affiant and AYALA discussed a meeting location and the amount of "three" (referring to three pounds of methamphetamine). This affiant agreed to meet AYALA at the McDonald's Restaurant near

National Avenue off of South Keystone Avenue. This affiant and AYALA met at the McDonald's restaurant, where this affiant entered the passenger side of a blue Hyundai in which Rafael AYALA was the lone occupant. This affiant and AYALA had a brief conversation and AYALA handed this affiant a speaker from the rear seating area and said that there were "three" in the speaker. This affiant took the speaker and departed AYALA's vehicle. This affiant transported the speaker to the DEA Office and removed the speaker cover which revealed three oval packages in vacuum sealed bags which had an approximate gross weight of 1452 grams of a substance that field-tested positive for methamphetamine.

_____
Michael D. Cline, Special Agent
Drug Enforcement Administration

Sworn to and subscribed to before me this 16th day of February, 2016.

_____
Denise K. LaRue
United States Magistrate Judge
United States District Court
Southern District of Indiana

5